## ALFRED LUKE FAUST, JR.

*vs.*

## LEON E. GRANSTEIN

Court of Common Pleas    New Haven County    File No. 34799

MEMORANDUM FILED MARCH 17, 1944.

*Nelson Harris,* of New Haven, for the Plaintiff.

*Albert E. Evans,* of New Haven, for the Defendant.

PICKETT, J. By his complaint plaintiff alleges that on or about October 6, 1943, on November 17, 1943, and again on December 1, 1943, he parked his car in a parking lot operated by the defendant at 95 Orange Street in New Haven, was charged and paid on each occasion a parking fee of $0.35 which he alleges was in excess of the established ceiling price, unlawful and in violation of section 205 (e) of the Emergency Price Control Act of 1942 [56 Stat. 34, U.S. Code, tit. 50, Appendix, §925 (e)]. He therefore sues to recover a penalty of $50 for each alleged violation.

Plaintiff assumes the burden to prove by a fair preponderance of the evidence, what the established or ceiling price was and that he was charged in excess thereof.

His proof fully establishes that he parked his car in defendant's lot on the three occasions claimed and paid $0.35 in each instance.

His evidence as to the established or ceiling price meets with serious obstacles.

It is clearly established that "parking" is a "commodity" or service within the scope of the Emergency Price Control Act of 1942, and covered by regulations promulgated thereunder.

The defendant as proprietor of a parking lot is a "seller" of a service under the Act and the regulations and therefore is obliged to observe an "established price" or ceiling price, when ascertained.

The difficulty arises in determining what is the "established price" applicable to defendant's particular place of business, how is it established and how ascertained?

It appears that the Office of Price Administration has not determined, published or decreeed any uniform, definite fixed price applicable to parking fees.

In lieu thereof, certain regulations or formulas have been promulgated by which the "established price" for each operator is to be determined.

These appear in the regulations [O.P.A. Maximum Price Regulation No. 165, as amended] as section 1499.102.

Subsection (a) thereof in substance fixes as one standard "The highest price charged during March 1942....by the seller" for the same or a similar service.

Defendant was not in the parking business in March of 1942 and therefore this formula has no application to the instant case.

Subsection (b) provides in effect that if formula (a) is not applicable the maximum price of the "most closely competitive seller of the same class" (1) for the same service or (2) for the similar service most nearly like it applies.

If neither (a) nor (b) is applicable, then a price determined by applying the rate, or pricing method and charges, regularly used by the seller for any other service or type of service which he supplieed during March, 1942, with certain limitations as to cost of labor, materials and subject to revision and modification by the Office of Price Administration applies.

Formula (c) above does not apply to defendant for there is no evidence that he was in business or supplied "any other service or type of service" in March, 1942.

A fourth provision is to the effect that one purchasing the business, assets and stock in trade of any existing business is limited to the highest prices charged by the predecessor.

This has no application to the instant case for defendant did not purchase the business, assets and stock in trade.

Plaintiff relies on formula (b) i.e., the maximum price of the most closely competitive seller of the same class for the same service or the similar service most nearly like it.

He offers evidence that there are at least two other "parking lots" located in the so-called "shopping area" of the city which charge $0.25 and therefore claims that defendant is limited to the like price.

This is true if these places are within the definition of the "most closely competitive seller of the same class."

Subsection (a) (5) of section 1499.116 of the regulations states "A sellers 'most closely competitive seller of the same class' shall be a seller of the same class who (a) is selling the same or a similar service, and (b) is closely competitive in the sale of such service, and (c) is located nearest to the seller."

From the evidence it appears that of the two parking lots comparable to defendant's, in respect that their location is such as to be convenient for shoppers, both are obviously rendering a similar service in respect that it is parking service.

Defendant contends and has consistently contended that neither of these "is closely competitive."

He supports this contention by certain facts.

His parking lot is on Orange Street about a half block from Chapel Street, close to a substantial number of dry goods stores, specialty shops, etc., in a locality where heavy traffic and congestion limits street parking, with no other conveniently located parking lot within several blocks in any direction.

He claims to cater only to shoppers, having eliminated all day and weekly parking and made his lot available to persons wishing to park while making purchases in the nearby stores.

He claims to employ well-paid and responsible attendants and to take special care to watch packages placed in the parked cars by customers.

He carries insurance covering cars parked on his premises against loss by fire or theft of the car.

It appears that other parking lot operators do not carry such insurance.

It does not appear that other parking operators cater exclusively to shoppers.

He asserts that his location is such that no other seller is "closely competitive."

His position therefore is that the price charged by others is not the established price for his particular lot.

In substance he claims that by virtue of his location and the limited trade to which he caters, he is in effect in a class by himself and that when in good faith he advertised and charged a price of $0.35 he was guilty of no violation.

The burden is upon the plaintiff to prove defendant's liability under the law. He has not sustained this burden.

The evidence is clear that defendant took possession of these premises and opened for business on October 1, 1943, under a five year lease at a monthly rental of $225.

He established the price of $0.35 on the basis of the number of cars the lot would accommodate, his rent, insurance, taxes and payroll, plus a reasonable profit.

Within a few days after he had opened, defendant was interviewed by the chairman of the Local Retail Price Panel of O.P.A., and was later invited to appear before the full panel for an interview concerning his parking charge. In reply to questions of the panel he made a frank statement of his case and claims, and freely stated: "If I thought I was violating, I would change my prices immediately, tomorrow morning."

Mr. Arpaia and Mr. Knight of O.P.A. were present. At the conclusion of the meeting "Mr. Knight advised Mr. Evans (defendant's attorney) to contact Mr. Ribicoff, Chief Price Attorney, for an official interpretation of the regulations."

It appears that all concerned at this interview were in doubt as to which, if any, price formula applied to defendant's case. This was on October 15, 1943.

On October 16, 1943, Mr. Evans wrote a lengthy letter to Mr. Ribicoff stating defendant's case and claims.

By letter dated October 22nd, Mr. Ribicoff replied and indicated that defendant's case must be governed by the "maximum price of the nearest parking lot providing the same type of service and insurance protection provided by Mr. Granstein. This determination must be made for each parking lot separately."

Consequent on this letter, defendant's attorney was noti-

fied by the Local Price·Panel "that there is no violation."

Defendant thereupon continued to charge $0.35.

Later, the Local Price Panel made further investigations and representations to the Price Enforcement Attorney which resulted in further conferences between Mr. Ribicoff, Mr. Evans and the defendant, and a final suggestion by Mr. Ribicoff that the whole matter be referred to the Regional Office in Boston, which was done.

Pending reply from Boston, Mr. Ribicoff on December 1st requested defendant, through his attorney, to lower his price to $0.25 which defendant did at about 6 p.m. December 1, 1943.

About 4 p.m. on December 1st, plaintiff parked his car in the lot and paid $0.35.

Since December 1st, defendant has charged only $0.25. Until the trial, defendant had no knowledge of what ruling was made by the Boston office. In so far as appears in evidence before the court, this ruling is in substance "under the circumstances....Mr. Granstein's maximum price....would seem to be $0.25 per car per day."

I cannot construe this to be an authoritative or categorical ruling establishing a price.

I find that plaintiff has failed in his burden to prove an authoritative "established price" and a violation thereof by the defendant.

This case strikingly illustrates the difficulty of formulating, interpreting, enforcing or complying with, regulations of a general nature but intended for specific application.

The scope of this decision is limited to the sole proposition that plaintiff failed to prove an existing "established price" and that defendant exceeded it. It is not within the function or power of the court to establish a price or approve or disapprove of one when established. Jurisdiction in such matters rests with the Office of Price Administration. It may be that there are other facts not disclosed at this trial which may justify further action by O.P.A. If so, the judgment in this case does not·preclude such action, nor does it determine that $0.35 either is, or is not, a proper charge under the circumstances.